PECK & SALSBURY *v.* THE PROVIDENCE STEAM ENGINE COMPANY et al.

PROVIDENCE STEAM ENGINE COMPANY *v.* MECHANICS SAVINGS BANK.

Where the owners of a tract of land, upon a plat thereof duly recorded, prescribed what, in some respects, should be the rights of the grantees of said lands under them; *Held*, 1. That a purchaser was bound by these declarations of the owners; 2. That a purchaser of a lot delineated on said plat, as bounding upon a street on one side and the public waters of the harbor on the other, could acquire no title to the land made by him by filling in in front of, and within the lines of, the delineated street; *but*, 3. Could acquire a perfect title in fee simple as against other owners of lots on said plat, by an adverse holding of the land so made, for twenty years, pursuant to the statute of possessions.

IN equity.   The points determined by the Court, in these causes, arose upon a state of facts substantially as follows :—

In 1816, Thomas P. Ives and others, owners in trust of a large tract of land in the city of Providence, bounding on the west and south by the public waters, caused a plat thereof to be made and recorded in the land records of the city, on and by which the said tract was divided into lots, streets, public squares and gangways, designating the lots (upwards of one hundred and sixty in number) by letters A to K, and by numbers 1 to 151.   The several streets and gangways were, upon the plat, delineated as extending into the waters of the harbor upon the southern and western sides, as also were the lines of some of the numbered lots.   This plat was placed on record in September, 1816, and upon its face was written the following instrument, under the

Peck & Salsbury *v.* Prov. St. Eng. Co. Prov. St. Eng. Co. *v.* Mechanics Sav. Bk.

hands and seals of the five trustees, and by them duly acknowledged before a justice of the peace :—

" Know all men whom it may concern, that all and singular the within numbered lots are sold and conveyed by us, the undersigned, trustees of the Fox Point Association, in manner following, that is to say :—all the square, streets and gangways are equally appurtenant to each and every of said lots, and each and every the grantees of the same are equally entitled to use and occupy said square, streets and gangways, as such at all times, excepting that the grantees of all and singular the water lots, their heirs and assigns forever, shall have the exclusive right to demand and receive wharfage for all the streets and gangways adjoining to their several lots respectively, and each and every the grantees of the water lots, on the west and south sides of said plat, beginning at lot number one and ending at lot number twenty-two inclusively, their heirs and assigns forever, shall have the sole right to use and occupy the several pieces of land west of the street, adjoining their several lots respectively, for all purposes, excepting that they nor either of them shall not, at any time ever hereafter, have the right to erect any permanent building on said pieces of land or either of them, and the grantee of lot number twenty-two, his heirs and assigns forever, shall have the same right to use and occupy the land south of said lot adjoining said street, subjected to the same restriction as aforesaid.

" In testimony whereof, we have hereunto set our hands and seals, this tenth day of May, 1816."

From time to time thereafter these lots were sold by the trustees, in single lots and groups, until all were disposed of, Asa and Jonathan Pike, June 11th, 1835, receiving from them a deed of one of the lots, thus described :—

" A certain lot of land situate, lying and being in the southerly part of said Providence, on the west side of Fox Point street, and is lot marked A on a plat of land belonging to the Fox Point Association, laid out and platted by Daniel Anthony,

surveyor, dated April 26th, 1816, which said plat is recorded in the records of the city of Providence, meaning hereby to convey to the said Asa and Jonathan, all right, title and interest which we, as trustees of said Association, have in and to said premises."

This lot A was on the northerly side of a delineated street, over a portion of which, as also over a portion of said lot, the tide flowed in 1823, when said Jonathan purchased, with other lands in the neighborhood, lot No. 23, lying directly opposite lot A, and on the south side of the street. Of some of these lots, including No. 23, Asa Pike was, for a series of years, co-owner with Jonathan, but, as early as 1850, Asa had conveyed his interest to Jonathan, who thereafter was sole owner until conveyance made, as hereinafter stated.

While these lands were thus owned, by the brothers Pike or by Jonathan, the lots A and 23, and also the tract between them, delineated as a street upon the plat, were filled in by them, and when, at a certain date, a new harbor-line was established by the legislature, the said Jonathan continued to fill in to that new line in front as well of the street-tract, as of his two adjacent lots; and in May, 1860, in a conveyance by him to the Mechanics Savings Bank of divers lots in the neighborhood, including lot No. 23, he conveyed to that corporation all his right, title and interest "in and to the whole of that portion of Pike street which lies on the westerly side of South Main street to the channel of the river,"—being the tract bounding south on lot No. 23, and north on the lot A.

In April, 1860, Pike conveyed certain lands (including lot A), lying north of the said delineated street, to a party, who subsequently conveyed the same to the Steam Engine Co., when arose a controversy between said company and Peck & Salsbury (lessees of the Mechanics Savings Bank) as to the title to, and relative rights in, the said street-tract,—a judicial settlement of which controversy was sought by the parties in these antagonist suits in equity. By agreement of parties, the two causes were heard as one, upon the bills and answers and the proofs taken in one case only.

On the part of the Mechanics Savings Bank and Peck & Salsbury, it was claimed and argued :—1. That by deeds exhibited the title of Pike and his grantees was established.   2. That by the act of filling in the land, Pike became the owner, to all intents, of the new-made land as against everybody—the State, by establishing a harbor-line, having licensed this appropriation of the public tide-flowed lands.    And, 3dly. That if not, upon this ground, the owner of said land, he was to be held to have become the owner by twenty years' exclusive, adverse possession ; while, by the opposing parties, it was claimed and argued, that by filling in Pike had acquired no title as against other owners of lots on the Fox Point plat, or as against the public, counsel contending that the original owners, by platting their lands as above stated, had dedicated to street purposes all those strips or tracts delineated on the plat as squares, streets and gangways, so that a purchaser of a lot could possess only a right of way over these strips or tracts ; and, contending also, that any filling in in the line of any street or gangway was to be regarded as done *pro bono publico*, with no purpose of ever asserting title thereto as individual property.

For the bank and their lessees, *Messrs. Tillinghast and Eames*, who cited *Adams v. Frothingham*, 3 Mass. 363 ; Angell's Tide Waters (ed. 1847), 236 : 1 Greenleaf's Ev. § 16 ; *Rowan's Executors* v. *Portland*, 8 B. Mon. 259 ; *Alves* v. *Henderson*, 16 Ib. 171 ; *Baldwin* v. *Buffalo*, 29 Barb. S. C. 396 ; *Underwood* v. *Stuyvesant*, 19 John. 181 ; *Stone* v. *Clarke*, 1 Met. 378 ; *Commonwealth* v. *Roxbury*, 9 Gray, 493 ; Washburn on Easements, 162 ; *Hall* v. *M'Leod*, 2 Met. 198 ; *Remington* v. *Millard*, 1 R. I. 93 ; Rev. Stats. of R. I. 353, § 3 ; *Simmons* v. *Mumford*, 2 R. I. 184, 185.

For the Steam Engine Co., *Messrs. B. F. Thurston and Currey*, who cited *Clap* v. *McNeil*, 4 Mass. 589 ; *Pride* v. *Lunt*, 1 Appleton, 115 ; *Parker* v. *Smith*, 17 Mass. 413 ; 4 Cruise, 255 ; 1 Greenl. Ev. § 297 ; 1 Washburn on Real Prop. 433, and cases cited, 418.

BRADLEY, C. J.   We are satisfied that the Mechanics Savings Bank, who hold under the Pike brothers, took their rights in the land originally, subject to the provisions and agreements on the

Fox Point plat.   Lot A, on the north side of what is called Pike street, was taken in express terms by the Pikes, subject to that plat.   Whether the deed of lands which they received, on the south side, is subject to the plat, in consequence of some question as to the time when the agreement upon it was made, it is unnecessary to decide.   At all events, as owners of lot A, they hold this street as originally subject to the rights marked out and specified to exist on the plat.

We also hold that the filling out and projection of Pike street, into the water, was done originally under, and pursuant to, the plat; and therefore it was filled out for the purpose of a street or highway, and did not become private property.   There are two decisions upon that point,—*Morris* v. *Jersey City Canal Co.* 1 Beasley (N. J.), 547, 558, and the case in 4 Denio, 9, cited therein,—expressly deciding that an individual who fills out a highway or a private way does not acquire, by force of that act of filling, an ownership inconsistent with the rights of way over the extended street.

There is another ground in argument, upon which the bank rely, as claiming to be the owners of this tract of land called Pike street,—the statute possession for twenty years.   The record, in the first case under which that point was argued, does not raise any such claim.   The bill is brought by Peck & Salsbury to enjoin the Providence Steam Engine Company from tearing down certain sheds, which the plaintiffs occupied, upon the street, and have held there for a number of years.   The Steam Engine Co. answer to that bill to enjoin, that, in the first place, they own certain portions of the land themselves, not the entire premises, and that they also have the right of way over the premises covered by these buildings.   The replication is the general one allowed under our rule.

It is obvious, from this state of the record, that the question of statute title, by possession for twenty years, is not made in this case.   This difference between the rules of common law pleading and equity pleading sometimes escapes the attention of counsel.   Upon the first case we could not decide the question

of statute title by possession.    As it is not made on the record, our decision would not determine the rights of parties.

In the second case, however, this question is made.    And though that case was not formally discussed before us, yet we have a right, under the agreement upon the record, to consider all the evidence applicable to that case.    The Steam Engine Co. are there the complainants, and they seek to establish affirmatively their right to this way, at least their right to use it as such. The answer sets up the adverse possession as one of the grounds of the defence, so that, in that case, such a title might be open for adjudication upon the record; but it is not entirely clear whether the claim is for a fee simple in the premises, or a lesser claim subject to certain rights in other parties.    But it is unnecessary to adjudicate the proper construction of the terms of the answer, as to which, upon first impression, we do not entirely agree, because we are all clear that this question of the existence of a statute title by possession, and of the extent of such title, should be determined by a jury.    It depends upon conflicting testimony, which arises out of the acts and sayings of parties, which the jury are peculiarly competent to decide correctly.    It is the policy of this State and of this Court, having confidence in trials by jury, to leave questions of fact, as much as possible, to the jury.    As the cases have been thoroughly and elaborately argued, it may not be improper for the Court to remark further, that there seems to be, upon the record, a difficulty, perhaps technical, in the way of the defence as to adverse possession ; because, for a portion of the twenty years, the adverse possession is the concurrent possession of Asa and Jonathan Pike.    In 1850, one conveys to the other all his property in these lots.    He does not purport to convey any right, inchoate or complete, in this street.    The deeds that are on file, in this case, are, in the view of the Court, consistent with either supposition, perhaps rather favoring the supposition of an existing street or right of way, spoken of as Pike street, extending to the channel.    On the other hand, there is a great mass of testimony taken by deposition, less satisfactory than if given before the tribunal deciding the question, yet a great body of testi-

mony, showing that the taking possession of this street was under a claim of right, a belief that it was private property.   We shall not therefore say, upon the present trial, that the bank and its assigns have not a right to this property by adverse possession.   The claim is not made, as was supposed perhaps, by counsel, upon the record in the first case, but was made, perhaps, sufficiently in the second case, and we therefore shall dispose of these bills without prejudice to the right of the Mechanics Savings Bank to bring a suit at law, and try their title by adverse possession.

In view of the argument of the question of injunction, it may not be improper further to say, that inasmuch as the occupation of this street, by these coal sheds, has existed for quite a number of years, as soon as any suit is commenced at law to establish the title by adverse possession, we shall feel it our duty, as at present advised, to enjoin the other party from proceeding to remove these sheds, upon these streets, pending the litigation.   The property is to remain in the condition in which it is found, for, though the plaintiff must establish his title, he has been in possession for many years, and that is a sufficient ground for an injunction against any disturbance of that possession pending the determination of the title.

The first bill, therefore, in which the party seeks to enjoin, must be dismissed, but without costs.   The second suit may remain for further order.

[NOTE.—In conformity with the suggestion of the Court, the bill of the bank was amended, and the question of title, by twenty years' possession, was submitted to a jury.   By consent of the parties, without a trial, the jury returned a verdict for the bank, whereupon decrees — in favor of the bank, in one case, and of Peck & Salsbury, in the other—were entered.—*Rep.*]